**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MYANKHAI BATCHULUUN, Individually and On Behalf of All Other Similarly Situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. 24-cv-02302 |
| v. | ) ) ) | Hon. Judge Jeremy C. Daniel Magistrate Judge Jeffrey T. Gilbert |
| WINGSTOP INC., and CONVERSENOW TECHNOLOGIES, INC., | ) ) ) | |
| Defendants. | ) ) | |

<u>**CONVERSENOW TECHNOLOGIES, INC.'S ANSWER AND
AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLASS ACTION COMPLAINT**</u>

NOW COMES Defendant ConverseNow Technologies, Inc. ("ConverseNow" or "Defendant"), by and through its undersigned counsel, and for its Answer and Affirmative Defenses to Plaintiff's Class Action Complaint ("Complaint"), states and alleges as follows:[1]

<u>**ANSWER**</u>

Except as otherwise expressly admitted in this Answer, ConverseNow denies each and every allegation contained in the Complaint. ConverseNow does not interpret headings as well-pleaded allegations of fact to which any response is required. To the extent a response is deemed required, ConverseNow denies all allegations in the headings (or subheadings) in the Complaint. Unless otherwise defined, capitalized terms shall refer to the capitalized terms defined in the Complaint; but, such use is not an acknowledgement or admission of any characterization Plaintiff may ascribe to the

---

[1] For ease of readability, to the extent any of the paragraphs of Plaintiff's Complaint include a footnote, the text of the footnote has been incorporated into the body of this Answer at the corresponding paragraph and responded to accordingly.

1

22150789 _1

terms. ConverseNow reserves the right to amend or supplement this Answer as permitted by the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1.      This lawsuit arises out of Defendants' actions in collecting, capturing, otherwise obtaining, using, and/or storing the biometric identifiers and/or biometric information, including the unique "voiceprints," of Plaintiff and other similarly situated individuals, without informing them in writing or obtaining their written consent, as required by BIPA.

**ANSWER:**      Paragraph 1 constitutes a narrative description by Plaintiff of her Complaint, such that no answer is necessary.  To the extent that an answer is needed for this paragraph, ConverseNow denies that it engaged in any wrongdoing, denies that it violated BIPA in any respect, and denies that this case is appropriate for class-action treatment.

2.      As the Illinois Legislature has recognized,

> [B]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, even sensitive information such as Social Security numbers can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

*Carpenter v. McDonald's Corp.*, 580 F.Supp 3d 512, 515 (N.D. Ill. 2022) (citing 740 ILCS 14/5); *see also Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 619 (7th Cir. 2020) (noting the "threat of irreparable privacy harms, identity theft, and other economic injuries" arising from biometric data).

**ANSWER:**      ConverseNow admits that Plaintiff appears to have quoted an excerpt from BIPA, as cited by the case law in Paragraph 2, but denies that the excerpt reflects the totality and substance of the statute.  ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

3.      In light of these privacy concerns, the growing use of biometrics in various contexts, and the fact that "[t]he full ramifications of biometric technology are not fully known," BIPA was enacted to regulate how private entities may collect, use, and/or store individuals' biometric identifiers, including voiceprints, and biometric information. 740 ILCS 14/5.

22150789 _1

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted excerpts from BIPA, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

4. BIPA, provides, *inter alia*, that no private entity may collect, capture, or otherwise obtain biometric identifiers (including voiceprints) or biometric information without first informing the subject in writing of the fact, purpose, and length of the collection and receiving a written release from the subject. 740 ILCS 14/15(b). BIPA also prohibits private entities from profiting from the biometric identifiers or information. 740 ILCS 14/15(c). BIPA further requires that private entities in possession of biometric identifiers or biometric information must develop a publicly available written policy establishing a schedule for their retention and, importantly, their destruction, within certain statutory time limits. 740 ILCS 14/15(a).

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted excerpts from BIPA, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

5. Although BIPA was enacted in 2008, Defendants have been violating the statute by collecting, capturing, otherwise obtaining, using, and/or storing the unique and highly sensitive "voiceprints" of thousands of individuals in Illinois, without their knowledge or consent, through the use of artificial intelligence ("AI")-assisted voice technology for Wingstop's customers' telephone orders, developed by Defendant ConverseNow.

**ANSWER:** ConverseNow denies the allegations in Paragraph 5.

6. Defendants do not appear to have publicly available retention or destruction schedules relating to biometric identifiers or biometric information, so it is likely that Defendants are retaining Plaintiff's and other Class members' biometric identifiers and/or biometric information beyond the time limits set by BIPA.

**ANSWER:** ConverseNow denies the allegations in Paragraph 6.

7. Plaintiff brings this action, on behalf of all individuals who had their voiceprints, biometric identifiers, and/or biometric information collected, captured, otherwise obtained, used, and/or stored, when making a telephone order at a Wingstop location in Illinois at any time within the applicable statute of limitations, to prevent Defendants from further violating Illinois law and to

22150789 _1

recover damages for Defendants' violations of his and other Class members' statutorily-protected rights to privacy under BIPA.

**ANSWER:** ConverseNow admits that Plaintiff purports to bring this suit as a class action for purported violations of BIPA, but ConverseNow denies that it engaged in any wrongdoing, denies that it violated BIPA in any respect, and denies that this case is appropriate for class-action treatment. ConverseNow denies the remaining allegations in Paragraph 7.

## THE PARTIES

8.      Plaintiff Myankhai Batchuluun is, and has been at all relevant times, a resident and citizen of Arlington Heights, Illinois. In February 2023, Mr. Batchuluun called the Wingstop location at 1312 E Rand Road, Unit 1, Prospect Heights, Illinois, to place an order for food, and interacted with AI-assisted voice technology during that call.

**ANSWER:**   ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 8, and therefore denies the same.

9.      Defendant Wingstop Inc. ("Wingstop") is incorporated in Delaware and maintains its principal place of business in Texas. Wingstop is the largest fast casual chicken wings-focused restaurant in the world, with system-wide sales for fiscal year 2023 of $3.5 billion.[1] Wingstop has over 2,200 locations worldwide – 1,500 of which are in the United States.[2] There are approximately 120 Wingstop locations in Illinois.

  1      Wingstop      2023      Form      10-K      (Dec.      30,      2023),      available      at https://ir.wingstop.com/wpcontent/uploads/2024/02/2023-Annual-Report.pdf ("Wingstop 2023 10-K"); see also https://ir.wingstop.com/wingstop-inc-reports-fiscal-fourth-quarter-and-full-year-2023-financialresults/.

  2 Wingstop 2023 10-K; Wingstop 2022 Investor Day Presentation (May 17, 2022), available at https://ir.wingstop.com/wp-content/uploads/2023/06/WING-Investor-Day-2022_compressed.pdf ("Wingstop Investor Day Presentation"), at 65.

**ANSWER:**   ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 9, and therefore denies the same.

10.      Defendant ConverseNow Technologies Inc. ("ConverseNow") is a private AI startup company founded in 2018, incorporated in Delaware, and headquartered in Texas. ConverseNow's patented voice AI technology is utilized at more than 1,800 stores in 46 states, including in Illinois.[3] ConverseNow "proudly operate[s] in more stores than any other restaurant voice AI company" and "processes[es] millions of live conversations each month."

3 https://conversenow.ai/company/; https://hospitalitytech.com/news-briefs/2023-12-

03?article=conversenows-voice-ai-assistants-redefine-restaurant-industry-

outstandingmilestones-and-growth.

4 https://conversenow.ai/technology/.

**ANSWER:**    ConverseNow admits that it is a private entity, founded in 2018, incorporated

in Delaware, and headquartered in Texas.  ConverseNow denies that the remaining allegations in

Paragraph 10 accurately and completely describe ConverseNow's business operations.

## JURISDICTION AND VENUE

11.    This court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d) because there are more than 100 Class members, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from at least one Defendant.

**ANSWER:**    ConverseNow denies that this case is appropriate for class-action treatment, and

therefore denies the allegations in Paragraph 11.

12.    Venue is proper in this District pursuant to 28 U.S.C. §1391(b)(1) and (c)(2) because Defendants do business in and are subject to personal jurisdiction in this District. Venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**ANSWER:**    ConverseNow denies the allegations in Paragraph 12.

## FACTUAL BACKGROUND

### I.    Illinois's Biometric Information Privacy Act

13.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [comes to their] biometric information," the Illinois Legislature enacted BIPA in 2008. Illinois House Transcript, 2008 Reg. Sess. No. 276. BIPA regulates, *inter alia*, "the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information." 740 ILCS 14/5(g).

**ANSWER:**    ConverseNow admits that Plaintiff appears to have quoted excerpts from an

Illinois House transcript and portion of a section of BIPA, but denies that these excerpts reflect the

totality and substance of the statute.  ConverseNow further denies that it violated BIPA in any respect.

22150789 _1

14.    Under BIPA, a "biometric identifier" refers to a person's "retina or iris scan, fingerprint, ***voiceprint***, or scan of hand or face geometry." 740 ILCS 14/10 (emphasis added). "In other words, a biometric identifier is a unique personal feature that can be used to identify a person." *McDonald's*, 580 F.Supp. 3d at 515. "Biometric information" refers to "any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier." 740 ILCS 14/10.

**ANSWER:**    ConverseNow admits that Plaintiff appears to have quoted excerpts from sections of BIPA and a sentence from the case cited in Paragraph 14, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies that it violated BIPA in any respect.

15.    While BIPA does not define "voiceprint," the dictionary defines it as a "distinctive pattern of curved lines and whorls made by a machine that measures human vocal sounds for the purpose of identifying an individual speaker." *McDonald's*, 580 F.Supp. 3d at 515 (citing "Voiceprint," BLACK'S LAW DICTIONARY (11th ed. 2019)).

**ANSWER:**    ConverseNow admits that Plaintiff appears to have quoted an excerpt from the case cited in Paragraph 15, and a dictionary definition cited in that case, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies that it violated BIPA in any respect.

16.    "The physical characteristics of one's voice and the manner of speaking are unique to every person and are stable enough to be used for extremely reliable identification."[5] Further, "[b]ased on voice samples that became known (directly or indirectly) to belong to certain individuals . . . and that would be typically stored in a database, it is possible to identify those persons at any moment in the future on the basis of the person's voice, even if no other identifiers would be revealed."[6] As such, voice recognition and voice AI technology pose serious risks, "from Oleksandr Pastukhov and Els Kindt, "Voice Recognition: Risks to Our Privacy," *Forbes* (Oct. 6, 2016), *available at* https://www.forbes.com/sites/realspin/2016/10/06/voice-recognition-every-single-day-every-word-you-say/?sh=6a3ce1af786d. *Id.* Indeed, "[f]orensic scientists may soon be able to glean more information from a mere violations of privacy to infringements on copyright law – with uses in criminal activity or fraudulent activity…."[7]

5 Oleksandr Pastukhov and Els Kindt, "Voice Recognition: Risks to Our Privacy," Forbes (Oct. 6, 2016), available at https://www.forbes.com/sites/realspin/2016/10/06/voice-recognition-everysingle-day-every-word-you-say/?sh=6a3ce1af786d.

22150789 _1

6 Id. Indeed, "[f]orensic scientists may soon be able to glean more information from a mere recording of a person's voice than from most physical evidence." Id.

7 "AI Voice Tech: What are the Privacy and Security Risks?," Lexology (June 21, 2023), available at https://www.lexology.com/library/detail.aspx?g=ad6dfe5c-a5e0-458a-bcff-63311942d8da.

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted excerpts from articles cited in Paragraph 16, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies that it violated BIPA in any respect.

17.    BIPA requires that before a private entity can collect, capture, or otherwise obtain an individual's biometrics, it must: (1) inform the person in writing that biometric identifiers or information will be collected or stored, (2) inform the person in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (3) obtain a written release from the person or their legally authorized representative authorizing the collection or his or her biometrics. 740 ILCS 14/15(b). The informed-consent requirement has been described by the Seventh Circuit as the "heart of BIPA," because it ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Bryant*, 958 F.3d at 626.

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted excerpts from a section of BIPA and an excerpt from the case cited in Paragraph 17, but denies that these excerpts reflect the totality and substance of the statute. ConverseNow further denies that it violated BIPA in any respect.

18.    In addition, "no private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted an excerpt from BIPA, but denies that the excerpt reflects the totality and substance of the statute. ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

22150789 _1

19.     BIPA also requires that

[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first.

740 ILCS 14/15(a).

**ANSWER:**    ConverseNow admits that Plaintiff appears to have quoted an excerpt from BIPA, but denies that the excerpt reflects the totality and substance of the statute. ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

20.     BIPA provides a private cause of action for any person aggrieved by a violation of the statute, and allows recovery of $1,000 for negligent violations and $5,000 for intentional or reckless violations, as well as attorneys' fees and litigation expenses, and injunctive relief. 740 ILCS 14/20.

**ANSWER:**    ConverseNow admits that Plaintiff appears to have quoted an excerpt from BIPA, but denies that the excerpt reflects the totality and substance of the statute. ConverseNow further denies Plaintiff's piecemeal characterization of the statute, and denies that ConverseNow violated BIPA in any respect.

## II. Defendants' Collection, Capture, Use, and/or Storage of Illinois Individuals' Biometric Identifiers and/or Biometric Information

21.     Wingstop has invested heavily in new technology initiatives in recent years,[8] referring to itself as "a tech company that serves flavor" and touting voice AI ordering as among the technology enhancements that would be "front and center in new restaurant format."[9]

8 See generally Wingstop 2023 10-K; Wingstop Investor Day Presentation.

9 Wingstop Investor Day Presentation at 65.

**ANSWER:** ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 9, and therefore denies the same.

22150789 _1

22.     On March 2, 2023, Defendant ConverseNow, one of the leading voice AI technology platforms for restaurants,[10] announced the completion of an evaluation agreement with Wingstop and a pilot program under which ConverseNow's voice-AI powered virtual assistants would handle Wingstop's phone orders in select restaurant locations nationwide.[11] In announcing the partnership, ConverseNow co-founder and CEO Vinay Shukla, stated: "We're excited to partner and grow together with Wingstop. It's been a pleasure seeing how our AI has been embraced by their guests and staff while driving results in sales and average tickets."[12]

10 https://info.conversenow.ai/dfa-2.

11 Press Release, "ConverseNow's Voice AI Soars to New Heights with Wingstop

Partnership" (Mar. 2, 2023), available at https://www.prweb.com/releases/conversenow-s-

voice-ai-soars-tonew-heights-with-wingstop-partnership-812192331.html.

12 *Id.*

**ANSWER:**     ConverseNow admits that it is one of the leading voice AI technology platforms for restaurants, and that Plaintiff has cited excerpts from a press release cited in Paragraph 22. ConverseNow denies that the remaining allegations in Paragraph 22 accurately and completely describe ConverseNow's agreements and programs with Wingstop.

23.     As explained by ConverseNow,

Voice AI, or conversational AI, is the newest generation of artificial intelligence for restaurants – a huge step up from the frustrating interactions we've all had in the past when talking to automated phone systems.

Introduced to guests as virtual ordering assistants, voice AI engages in limitless conversations at once: each with the personable, tailored approach that people expect when speaking to a team member. Combining the ease and efficiency of online ordering with the customizable, high-touch experience of traditional drive-thru and phone conversations, voice AI automates the previously time-consuming order-taking process with remarkable accuracy. And with national and international QSR [quick service restaurant] brands racing to integrate conversational AI into their operation, voice AI is sweeping the restaurant industry.[13]

13 https://conversenow.ai/.

22150789 _1

**ANSWER:** ConverseNow admits that Plaintiff has cited excerpts from a webpage cited by Plaintiff, but ConverseNow denies that the allegations in Paragraph 23 constitute a complete description of ConverseNow's voice AI technology.

24. The way ConverseNow's voice AI technology works is as follows: "Voice AI uses natural language processing (NLP), natural language understanding (NLU) and machine learning algorithms to interpret and respond to speech, and to learn from these user interactions."[14] This creates "a feedback loop where the voice AI platform continuously refines the underlying algorithms."[15] Moreover, "[p]rogress in voice AI capabilities not only allows accurate speech recognition and voice generation but also enables multilingual fluency and the implementation of custom voices. Casual consumers as well as business owners can tailor their selected voice AI platform to their preferred specificities."[16]

14 "Conversational AI vs. Legacy Phone Systems: How Voice AI Prevails" (Oct. 5, 2022), available at https://conversenow.ai/resources/conversational-ai-vs-legacy-phone-systems/.

15 *Id.*

16 "The State of Restaurant Voice AI Technology 2022," available at https://conversenow.ai/resources/voice-ai/.

**ANSWER:** ConverseNow admits that Plaintiff has cited excerpts from webpages cited by Plaintiff, but ConverseNow denies that the allegations in Paragraph 24 constitute a complete description of ConverseNow's voice AI technology.

25. ConverseNow's voice AI technology is touted as providing numerous benefits to restaurants. First, because it can handle "limitless" numbers of calls at the same time, there are "[n]o more missed orders because someone couldn't answer the phone or the customer hung up after hearing a busy signal."[17] This increases sales, "[b]oost[s] output with team members entirely focused on prep, fulfillment and in-person service, without having to stop and answer the phone every few minutes," and "captur[es] upsell opportunities that team members may forget about or feel too rushed to attempt."[18] Indeed, ConverseNow boasts that its voice AI technology is helping restaurants to achieve 31% same-store sales growth and a 17% average increase in tickets (due to upsell), and is providing up to 71 hours of additional labor per store each month.[19]

17 https://conversenow.ai/technology/.

18 *Id.*

19 https://info.conversenow.ai/dfa-2.

22150789 _1

**ANSWER:** ConverseNow admits that Plaintiff has cited excerpts from webpages cited by Plaintiff, but ConverseNow denies that the allegations in Paragraph 25 constitute a complete description of ConverseNow's voice AI technology.

26. ConverseNow's voice AI technology is also credited with "reduc[ing] employee turnover and improv[ing] employee retention by lightening the burden on team members who are stressed out from constant multitasking," "contribut[ing] to a satisfying customer experience through consistent, personalized guest service," and enabling restaurants "to cut costs while simultaneously improving productivity and profits."[20]

20 "Why Voice AI is the Best Restaurant Management Strategy" (Jan. 26, 2023), available at https://conversenow.ai/resources/restaurant-management/.

**ANSWER:** ConverseNow admits that Plaintiff has cited excerpts from webpages cited by Plaintiff, but ConverseNow denies that the allegations in Paragraph 26 constitute a complete description of ConverseNow's voice AI technology.

27. Based on the investigation of Plaintiff's counsel, ConverseNow's voice AI technology is being used by at least 60 Wingstop locations in Illinois.

**ANSWER:** ConverseNow denies the allegations in Paragraph 27.

28. Unbeknownst to Illinois customers, through the use of ConverseNow's voice AI technology, Defendants are collecting, capturing, otherwise obtaining, using, and/or storing customers' voiceprints, biometric identifiers, and/or biometric information in order to understand, analyze, interpret, and/or use their speech signals; to help improve the accuracy and effectiveness of ConverseNow's voice AI technology;[21] to gather customer-specific data and/or identify specific customers; and to facilitate reordering and upselling.

21 Indeed, "ConverseNow has achieved a remarkable 22% increase in overall AI accuracy since last year." "ConverseNow's Voice AI Assistants Redefine the Restaurant Industry with Outstanding Milestones and Growth" (Dec. 8, 2023), *available at* https://hospitalitytech.com/news-briefs/2023-12-03?article=conversenows-voice-ai-assistants-redefine-restaurant-industry-outstanding-milestones-and-growth.

**ANSWER:** ConverseNow denies the allegations in Paragraph 28.

22150789 _1

29.    This is clear from ConverseNow's own descriptions of its voice AI technology:

ConverseNow's "Voice AI uses natural language processing (NLP), natural language understanding (NLU) and machine learning algorithms to *interpret and respond to speech, and to learn from these user interactions*. This results in a feedback loop where the voice AI platform continuously refines the underlying algorithms. Put simply, voice AI makes every conversation better than the last."[22]

[22] "Conversational AI vs. Legacy Phone Systems: How Voice AI Prevails"

(Oct. 5, 2022), *available at* https://conversenow.ai/resources/conversational-

ai-vs-legacy-phone-systems/ (emphasis added).

**ANSWER:**    ConverseNow denies the allegations in Paragraph 29.

30.    "*By processing millions of conversations a month, AI learns at an exponential rate*, akin to a top team member absorbing the lessons learned by every other team member and manager in not just your stores, but all stores across your brand where AI operates." "[V]oice AI platforms use their *memories of past conversations* to recommend relevant order suggestions and upsells based on trends and guest order histories." Further, "voice AI assistants aren't merely executing simple, scripted actions. *Virtual assistants are dynamic conversationalists that recognize context clues, read between the lines and refine their algorithms with each order*. This means the ordering assistants *learn to recommend relevant order suggestions and upsells based on prior guest orders."[25]*

23 "AI vs. Call Center vs. Taking Orders In-Store" (Aug. 15, 2023), available at https://conversenow.ai/resources/ai-vs-call-center-vs-

taking-orders-in-store/ (emphasis added).

24 "A Guide to the Restaurant AI Installation and Training Process" (Dec. 21, 2022), available at https://conversenow.ai/resources/restaurant-ai/ (emphasis added).

25 "6 Franchise Trends that Restaurant Operators Need to Know" (Oct. 21, 2022), available at https://conversenow.ai/resources/franchise-trends/

(emphasis added).

**ANSWER:**    ConverseNow admits that Plaintiff has cited excerpts from webpages cited

by Plaintiff, but ConverseNow denies that the allegations in Paragraph 30 constitute a complete

description of ConverseNow's voice AI technology.

31.    In addition, one of voice AI's biggest advantages over other technologies is its

22150789 _1

ability, through the use of "advanced analytics," to "provide[ ] insights into guest behavior once limited to direct interactions with an individual or through a guest feedback survey." This is because "Voice AI uses machine learning to ***instantly store insights on each transaction*** and process massive amounts of data" and "can ***analyze patterns and trends*** in the moment and ***provide personalized recommendations to guests***." Voice AI also "***uses sentiment analysis*** to extract valuable insights on previous customer interactions to ***tailor suggested upsells based on the customer's previous orders, as well as based on learning from other conversations the AI has experienced across millions of other guest interactions***."

26 "AI is Reshaping the Most Profitable Fast Food Chains" (Sept. 1, 2022), available at

https://conversenow.ai/resources/most-profitable-fast-food-chains/.

27 Id. (emphasis added).

28 "Why Restaurants Need Voice AI, Not Just Call Centers, to Keep up with Demand" (July

8, 2022), available at https://conversenow.ai/resources/voice-ai-vs-traditional-call-centers/

(emphasis added).

**ANSWER:**    ConverseNow admits that Plaintiff has cited excerpts from webpages cited by

Plaintiff, but ConverseNow denies that the allegations in Paragraph 31 constitute a complete

description of ConverseNow's voice AI technology.

32.    In September 2023, ConverseNow announced a rollout of its latest, augmented virtual ordering assistant, which incorporates generative AI[29] from Open AI's ChatGPT and Bard to train its model:

"With our platform serving more than one million guests every month, ConverseNow has the unique advantage of ***possessing domain-specific and up-to-date proprietary data. The access to this data allows us to continuously augment and improve these proprietary LLMs [large language models]*** and deliver an even stronger guest experience, thereby creating an upward spiral of continuous improvement," Rahul Aggarwall, co-founder, COO and chief product officer, ConverseNow, said in the release.[30]

29 In contrast to conversational AI, which "focuses on facilitating natural language

conversations between humans and AI systems," generative AI "focuses on creating

new and original content using machine learning algorithms."

https://medium.com/@social_65128/differences-betweenconversational-ai-and-  generative-

22150789 _1

ai-e3adca2a8e9a.

[30] "ConverseNow Intros AI Ordering" (Aug. 29, 2023), *available at* https://www.qsrweb.com/news/conversenow-intros-ai-ordering/ (emphasis added).

**ANSWER:** ConverseNow admits that, in or around September 2023, it announced a rollout of its software incorporating generative AI, and that Plaintiff has cited excerpts from webpages cited by Plaintiff, but ConverseNow denies that the allegations in Paragraph 32 constitute a complete description of ConverseNow's voice AI technology.

33.     ConverseNow's patents also indicate that its voice AI technology collects, captures, otherwise obtains, uses, and/or stores individuals' voiceprints, biometric identifiers, and/or biometric information. For example, one ConverseNow patent, Patent Number 11,348,160 (May 31, 2022), titled "Determining Order Preferences and Item Suggestions," states:

> The ordering system may utilize the ordered items in combination with various contextual cues to *determine a customer identity which may then be linked to past orders and/or various order preferences*. Based on the *determined customer identity*, the system may provide recommendations of additional order items or order alterations to the customer before *personally identifying information (PII) has been collected from the customer*. The determination of the customer identity and the determination of recommendations may be performed by one or more machine learning algorithms that are trained on customer data, the retail store product listing, and associated data. *The customer responses and past orders may be used to continually update the machine learning models and improve the quality of the customer experience.*[31]

[31]https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11348160 (emphasis added).

**ANSWER:** ConverseNow admits that Plaintiff has cited excerpts from the patent cited in Paragraph 33, but ConverseNow denies that the excerpts constitute an accurate and complete description of the subject patent, and further denies Plaintiff's piecemeal characterization of the patent ConverseNow denies the remaining allegations in Paragraph 33, including Plaintiff's allegations that ConverseNow's voice AI implicates or violates BIPA in any respect.

22150789 _1

34.    Another ConverseNow patent, Patent Number 2022/0277282 (Sept. 1, 2022), titled "Artificial Intelligence (AI) Order Taking System Enabling Agents to Make Corrections Via Point of Sale (POS) Devices," states:

> ***The data that is generated by each order, including the customer's utterances (e.g., audio)***, the text (*e.g.*, created based on a transcription of the customer's utterances), the software agent's modifications to the contents of a cart based on the text, and the corrections made by the human agent to the text and to the contents of the cart ***are stored and used at a later date as training data to retrain one or more machine learning algorithms***. In this way, the automatic speech recognition (ASR) algorithm that converts speech (*e.g.*, the customer's utterances) to text and the software agent's modifications to the contents of the cart based on the text may be ***continually improved by the retraining to improve the accuracy of (i) the ASR algorithm and (ii) the AI-based software agent.***[32]
>
> [32] https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/20220277282
>
> (emphasis added).

**ANSWER:**    ConverseNow admits that Plaintiff has cited excerpts from the patent cited in Paragraph 34, but ConverseNow denies that the excerpts constitute an accurate and complete description of the subject patent and further denies Plaintiff's piecemeal characterization of the patent. ConverseNow denies the remaining allegations in Paragraph 34, including Plaintiff's allegations that ConverseNow's voice AI implicates or violates BIPA in any respect.

35.    ConverseNow's Patent Number 11,355,122 (Aug. 25, 2022), titled "Adaptively Modifying Dialog Output by an Artificial Intelligence Engine During a Conversation with a Customer," states:

> The systems and techniques described herein ***determine a type of customer based on the words the customer uses, the speed of the delivery of the words, the inflection and pitch of the words, one or more emotions conveyed by the words, other information, or any combination thereof***. The type of customer is used to determine a user model. The systems and techniques use the user model and a conversation state ***to adapt, in real-time, the dialog flow and recommendations***. By gaining a deeper understanding of the customer, the systems and techniques are able to improve the entire user experience when placing an order.
>
> [33]   https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11355122
> (emphasis added).

22150789 _1

**ANSWER:**    ConverseNow admits that Plaintiff has cited excerpts from the patent cited in Paragraph 35, but ConverseNow denies that the excerpts constitute an accurate and complete description of the subject patent and further denies Plaintiff's piecemeal characterization of the patent. ConverseNow denies the remaining allegations in Paragraph 35, including Plaintiff's allegations that ConverseNow's voice AI implicates or violates BIPA in any respect.

36.    ConverseNow's Patent Number 11,355,122 (June 7, 2022), titled "Using Machine Learning to Correct the Output of an Automatic Speech Recognition System," states:

> The AI engine may determine (e.g., predict) recommendations that the software agent provides in the response as part of the conversation. For example, the recommendations may be based on items that the customer has previously ordered. . . To determine items that the customer previously ordered, ***the AI engine may determine an identity of the customer based on***, for example, ***an identifier*** (e.g., a phone number, an Internet protocol (IP) address, caller identifier, or the like) associated with the customer device, ***voice recognition***, facial recognition (*e.g.*, in the case of a video call), ***or another identifying characteristic***...

> 34                                          https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11355122

(emphasis added).

**ANSWER:**    ConverseNow admits that Plaintiff has cited excerpts from the patent cited in Paragraph 36, but ConverseNow denies that the excerpts constitute an accurate and complete description of the subject patent and further denies Plaintiff's piecemeal characterization of the patent. ConverseNow denies the remaining allegations in Paragraph 36, including Plaintiff's allegations that ConverseNow's voice AI implicates or violates BIPA in any respect.

37.    And ConverseNow's most recent patent, Patent Number 11,862,157 (Jan. 2, 2024), titled "Automated Ordering System," states:

> ***The conversation data*** that includes the verbal interaction between the employee and the customer when the customer is placing an order ***is archived***. ***The conversation data is used to train an AI engine*** to provide a software agent (e.g., sometimes referred to as a 'chat bot').

***

22150789 _1

> ***To determine items that the customer previously ordered, the AI engine may determine an identity of the customer based on***, for example . . . ***voice recognition*** . . . ."

35 https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/11862157

(emphasis added).

**ANSWER:**     ConverseNow admits that Plaintiff has cited excerpts from the patent cited in Paragraph 37, but ConverseNow denies that the excerpts constitute an accurate and complete description of the subject patent and further denies Plaintiff's piecemeal characterization of the patent. ConverseNow denies the remaining allegations of Paragraph 37, including Plaintiff's allegations that ConverseNow's voice AI implicates or violates BIPA in any respect.

38.     Upon information and belief, Defendants have not informed individuals in writing that their biometric identifiers or biometric information is being collected, captured, or otherwise obtained, nor have they informed customers of the purpose or length of time for which such information is being collected, stored, or used. 740 ILCS 14/15(b).

**ANSWER:**     ConverseNow denies the allegations of Paragraph 38.

39.     Upon information and belief, Defendants have not received written releases executed by individuals whose biometric identifiers and/or biometric information is being collected, stored, or used.

**ANSWER:**     ConverseNow denies the allegations of Paragraph 39.

40.     Upon information and belief, Defendants do not have publicly-available written policies regarding the retention or permanent destruction of the biometric identifiers or biometric information that they possess, "when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first," as required by BIPA. 740 ILCS 14/15(a). As such, it is likely that Defendants are retaining Plaintiff and other similarly situated individuals' biometric identifiers and/or biometric information beyond the time limits set by BIPA.

[36] Indeed, the only section of Wingstop's privacy policy relating to biometrics is for California residents. https://www.wingstop.com/privacy. Nor are any policies relating to biometric data or biometric information discussed on ConverseNow's website.

https://conversenow.ai/privacypolicy/.

22150789 _1

**ANSWER:** ConverseNow denies the allegations of Paragraph 40.

## III. Plaintiff's Experience

41. In February 2023, Mr. Batchuluun called the Wingstop location at 1312 E Rand Road, Unit 1, Prospect Heights, Illinois, from his cellphone to place an order for food delivery. During the call, Mr. Batchuluun interacted with a voice AI assistant who took his order and collected certain personal information from Mr. Batchuluun, including his name and telephone number.

**ANSWER:** ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 41, and therefore denies the same.

42. Upon information or belief, the voice AI technology utilized for taking Mr. Batchuluun's order collected, captured, used, and/or stored his unique voiceprint, biometric identifiers, and/or biometric information.

**ANSWER:** ConverseNow denies the allegations in Paragraph 42.

43. At no time before or during the call was Mr. Batchuluun ever informed (much less in writing), that his biometric identifiers or biometric information was being collected, captured, used, and/or stored by Defendants.

**ANSWER:** ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 43, and therefore denies the same.

44. Nor did Mr. Batchuluun ever provide a written release authorizing the collection, use, or storage of his biometric identifiers or biometric information.

**ANSWER:** ConverseNow lacks sufficient knowledge or information with which to admit or deny the allegations in Paragraph 44, and therefore denies the same.

## CLASS ALLEGATIONS

45. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of a class of similarly-situated individuals, defined as follows (the "Class"):

> All individuals who had their voiceprints, biometric identifiers, and/or biometric information collected, captured, otherwise obtained, used, and/or stored by Defendants when making a telephone order at a Wingstop location in the State of Illinois at any time within the applicable statute of limitations.

22150789 _1

**ANSWER:** ConverseNow admits that Plaintiff purports to bring this action as a class action. ConverseNow denies that a class action is appropriate in this case, denies that Plaintiff is an appropriate class representative, and denies that Plaintiff is entitled to any relief or damages whatsoever in this action. ConverseNow denies the remaining allegations in Paragraph 45.

46.     Excluded from the Class are Defendants; Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents has a controlling interest (as well as current or former employees, officers and directors); Plaintiff's counsel and Defendants' counsel; and the legal representatives, successors, and assigns of any such excluded persons.

**ANSWER:** ConverseNow admits that Plaintiff purports to exclude certain persons from the class, but denies that a class action is appropriate in this case. ConverseNow denies the remaining allegations in Paragraph 46.

47.     **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes there are many thousands of persons in the proposed Class.

**ANSWER:** ConverseNow denies the allegations in Paragraph 47.

48.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class, which predominate over any questions affecting only individual members. Common questions of law and fact include:

a.  Whether Defendants collected, captured, or otherwise obtained biometric identifiers and/or biometric information from Plaintiff and the Class;
b.  Whether Defendants stored Plaintiff and the Class's biometric identifiers and/or biometric information;
c.  Whether Defendants used Plaintiff and the Class's biometric identifiers and/or biometric information;
d.  Whether Defendants informed Plaintiff and the Class in writing that their biometric identifiers and/or biometric information were being collected, stored, or used, and, if so, for what purpose and length of time;
e.  Whether Defendants obtained a written release executed by Plaintiff and the Class before capturing, collecting, or otherwise obtaining their biometric identifiers and/or biometric information;
f.  Whether Defendants maintained a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and/or biometric information;

19

22150789 _1

g. Whether Defendants retained Plaintiff and the Class's biometric identifiers and/or biometric information beyond the time limits set by BIPA;

h. Whether Defendants used Plaintiff and the Class's biometric identifiers and/or biometric information to identify them;

i. Whether Defendants profited from Plaintiff and the Class's biometric identifiers and/or biometric information;

j. Whether Defendants' conduct has violated BIPA;

k. Whether Defendants' BIPA violations were committed intentionally, recklessly, or negligently; and

l. Whether Plaintiff and the Class are entitled to damages and injunctive relief.

**ANSWER:** ConverseNow denies the allegations in Paragraph 48, including all subparagraphs, (a) through (l).

49. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class because the basis of Defendants' liability to Plaintiff and the Class is substantially the same, and all members of the Class have suffered similar injuries as a result of the same practices alleged herein.

**ANSWER:** ConverseNow denies the allegations in Paragraph 49.

50. **Fair and Adequate Representation**: Plaintiff will fairly and adequately represent the interests of the members of the Class and have no interests antagonistic to or in conflict with those of the Class. Plaintiff's claims are typical of the claims of the members of the Class because the basis of Defendants' liability to Plaintiff and the Class is substantially the same, and all members of the Class have suffered similar injuries as a result of the same practices alleged herein. Further, Plaintiff has retained qualified counsel with substantial experience in prosecuting complex litigation and class actions nationwide.

**ANSWER:** ConverseNow denies the allegations in Paragraph 50.

51. **Superiority**: A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**ANSWER:** ConverseNow denies the allegations in Paragraph 51.

## FIRST CAUSE OF ACTION
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(a)
### (On behalf of Plaintiff and the Class)

52. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

22150789 _1

**ANSWER:** ConverseNow repeats and incorporates by reference its answers to the foregoing allegations as if fully set forth herein.

53. Defendants are private entities under BIPA.

**ANSWER:** ConverseNow admits that it is a private entity as defined by BIPA, but denies that its voice AI technology implicates or violates BIPA in any respect.

54. BIPA requires that "[a] private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first." 740 ILCS 14/15(a).

**ANSWER:** ConverseNow admits that Plaintiff appears to have quoted a provision of BIPA in Paragraph 54, but denies that, taken alone, this provision accurately and completely reflects the totality of the statute. ConverseNow denies any characterization and denies the remaining allegations of Paragraph 54.

55. Through their use of voice AI technology for telephone orders at Wingstop locations in Illinois, Defendants possessed, and exercised control over, Plaintiff and the other Class members' biometric identifiers and/or biometric information.

**ANSWER:** ConverseNow denies the allegations in Paragraph 55.

56. Upon information and belief, at all relevant times, Defendants have never had written, publicly-available biometric identifier or biometric information retention or destruction policies in place, as required by BIPA. As such, it is likely that Defendants have not, and will not, destroy Plaintiff and the Class's biometric identifiers and/or biometric information within the time limits set by BIPA.

**ANSWER:** ConverseNow denies the allegations in Paragraph 56.

57. Defendants' violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA.

**ANSWER:** ConverseNow denies the allegations in Paragraph 57.

22150789 _1

## SECOND CAUSE OF ACTION
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(b)
### (On behalf of Plaintiff and the Class)

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

**ANSWER:**     ConverseNow repeats and incorporates by reference its answers to the foregoing allegations as if fully set forth herein.

59.     Defendants are private entities under BIPA.

**ANSWER:**     ConverseNow admits that it is a private entity as defined by BIPA, but denies that its voice AI technology implicates or violates BIPA in any respect.

60.     BIPA requires that before a private entity can collect, capture, or otherwise obtain an individual's biometrics, it must: (1) inform the person in writing that biometric identifiers or information will be collected or stored, (2) inform the person in writing of the specific purpose and length of term for which such biometrics are being collected, stored, and used, and (3) obtain a written release from the person or their legally authorized representative authorizing the collection or his or her biometrics. 740 ILCS 14/15/(b).

**ANSWER:**     ConverseNow admits that Plaintiff appears to be paraphrasing a provision of BIPA in Paragraph 60, but denies that, taken alone, this provision accurately and completely reflects the totality of the statute.   ConverseNow denies any characterization and denies the remaining allegations of Paragraph 60.

61.     Defendants collected, captured, or otherwise obtained Plaintiff and the other Class members' biometric identifiers and/or biometric information when they interacted with ConverseNow's voice AI technology while placing orders by telephone at Wingstop locations in Illinois.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 61.

62.     Defendants failed to inform Plaintiff and the other Class members in writing, in advance, that their biometric identifiers and/or biometric information was being collected or stored, as required by 740 ILCS 14/15(b)(1).

**ANSWER:**     ConverseNow denies the allegations in Paragraph 62.

22150789 _1

63.     Defendants failed to inform Plaintiff and the other Class members in writing of the specific purpose and length of term for which their biometric identifiers and/or biometric information is being collected, stored, and used, as required by ILCS 14/15(b)(2).

**ANSWER:**     ConverseNow denies the allegations in Paragraph 63.

64.     Defendants failed to obtain a written release from Plaintiff, the other Class members, or their authorized representatives, as required by 740 ILCS 14/15(b)(3). As such, Plaintiff and the other Class members' privacy rights and privacy interests in their biometric identifiers and/or biometric information have been violated.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 64.

65.     Defendants' violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 65.

## THIRD CAUSE OF ACTION
### Violation of the Illinois Biometric Information Privacy Act, 740 ILCS 14/15(c)
### (On behalf of Plaintiff and the Class)

66.     Plaintiff repeats and reallege each and every allegation contained above as if fully set forth herein.

**ANSWER:**     ConverseNow repeats and incorporates by reference its answers to the foregoing allegations as if fully set forth herein.

67.     Defendants are private entities under BIPA.

**ANSWER:**     ConverseNow admits that it is a private entity as defined by BIPA, but denies that its voice AI technology implicates or violates BIPA in any respect.

68.     BIPA provides that "no private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

**ANSWER:**     ConverseNow admits that Plaintiff appears to have quoted a provision of BIPA in Paragraph 68, but denies that, taken alone, this provision accurately and completely reflects the

22150789 _1

totality of the statute. ConverseNow denies any characterization and denies the remaining allegations of Paragraph 68.

69.     Through their use of voice AI technology for telephone orders at Wingstop locations in Illinois, Defendants possessed, and exercised control over, Plaintiff and the other Class members' biometric identifiers and/or biometric information.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 69.

70.     Wingstop profited from Plaintiff and the other Class members' biometric identifiers and/or biometric information in the form of, *inter alia*, increased sales and profits, lower costs, increased productivity, and improved customer experiences.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 70.

71.     ConverseNow profited from Plaintiff and the other Class members' biometric identifiers and/or biometric information by, *inter alia*, using them to improve its voice AI technology, increase sales of the technology, and gain an edge over its competitors.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 71.

72.     As a result, Plaintiff and the other Class members have been injured by Defendants' conduct, including through the unknowing loss of control of their unique biometric identifiers and/or biometric information and violation of their rights in, ownership of, and right to profit from, their unique biometric identifiers and/or biometric information.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 72.

73.     Defendants' violations of BIPA, a statute that has been in effect since 2008, were intentional or in reckless disregard of the statutory requirements. Alternatively, Defendants negligently failed to comply with BIPA.

**ANSWER:**     ConverseNow denies the allegations in Paragraph 73.

**PRAYER FOR RELIEF**

To the extent that any response to the Prayer for Relief is required, ConverseNow admits only that Plaintiff seeks the relief described in this unnumbered paragraph. ConverseNow denies that Plaintiff and/or the alleged putative class are entitled to any relief whatsoever. ConverseNow denies the remaining allegations in the Prayer for Relief.

22150789 _1

**JURY DEMAND**

Plaintiff hereby demands a trial by jury of all claims that can be so tried.

**ANSWER:**    ConverseNow denies that Plaintiff or any of the putative class members are entitled to have a jury resolve the alleged claims.

**AFFIRMATIVE AND OTHER DEFENSES**

Alternatively, and without waiving any of the foregoing denials, ConverseNow asserts the affirmative and additional defenses below. In setting forth these defenses, ConverseNow does not assume any burden of proof as to any fact issue or other element of any cause of action or defense that properly belongs to Plaintiff.  All defenses are pleaded in the alternative and do not constitute an admission of liability or an admission that Plaintiff or any member of the putative class is entitled to any relief whatsoever from ConverseNow.  Moreover, in asserting defenses as to the putative class members' claims, ConverseNow in no way concedes that any class may properly be certified and expressly reserves its right to oppose class certification.  ConverseNow additionally reserves the right to amend, alter, or supplement its defenses.

1.      Plaintiff's claims and the claims of any putative class member(s) are barred to the extent they seek remedies beyond those provided for in the Illinois Biometric Information Privacy Act.

2.      Plaintiff's claims and the claims of any putative class member(s) are barred, in whole or in part, by the applicable statute of limitations and/or are otherwise untimely.

3.      Plaintiff's claims and the claims of any putative class member(s) fail, in whole or in part, to state claims upon which relief can be granted.

4.      Plaintiff's claims and the claims of any putative class member(s) are barred to the extent they waived and/or released the claims asserted in the Complaint.

22150789 _1

5.     Plaintiff's claims and the claims of any putative class member(s) are barred to the extent that Defendant's conduct was not the actual or proximate cause of any loss suffered by Plaintiff and/or putative class members.

6.     Plaintiff's claims and the claims of any putative class member(s) are barred to the extent that Plaintiff and/or any putative class member(s) lack standing under Article III of the United States Constitution to assert claims under BIPA.

7.     Plaintiff's claims and the claims of any putative class member(s) are barred to the extent they signed an arbitration agreement and/or class action waiver.

8.     To the extent the Complaint seeks equitable relief against Defendant, such claims are barred because Plaintiff has an adequate remedy at law. Specifically, Plaintiff has alleged that he is entitled to statutory damages for alleged violation of BIPA, which will result in monetary recovery if any such alleged violations are proven.

9.     The claims of Plaintiff and/or the putative class members are barred, in whole or in part, to the extent Defendant has not collected, captured, purchased, received through trade, or otherwise obtained any such information and, as such, is not subject to BIPA.

10.     Plaintiff cannot state a claim under BIPA for any instances in which he provided consent to have his biometric information captured. To the extent Plaintiff alleges that Defendant is liable because Plaintiff's and/or putative class members' biometric information was collected without their consent, Plaintiff's claims are barred because Plaintiff and/or putative class members voluntarily consented to the collection of such information.

10.     To recover damages under BIPA, a plaintiff must demonstrate that a defendant violated BIPA intentionally, recklessly, or negligently. Defendant has not engaged in negligent, reckless, or intentional conduct to support a damages award under BIPA.

22150789 _1

11.     Plaintiff can recover attorneys' fees under BIPA only if he is the "prevailing party." *See* 740 ILCS 14/20. Because Plaintiff's claims are unfounded, Plaintiff is not a "prevailing party" under BIPA and therefore is not entitled to attorneys' fees.

12.     The claims of Plaintiff and/or the putative class are barred, in whole or in part, by various equitable doctrines, including, without limitation, the doctrines of estoppel, laches, waiver, and/or unclean hands. Plaintiff voluntarily approved and participated in the conduct that the complaint alleges was wrongful without objection and is, accordingly, barred from asserting BIPA claims based on such conduct. Moreover, Plaintiff unreasonably delayed seeking recovery under BIPA, which delay materially prejudiced Defendant.

13.     The claims of Plaintiff and/or the putative class are barred because, to the extent BIPA applies to the conduct alleged, Defendant substantially complied with the requirements of BIPA, including by making adequate disclosures at the time that customers voluntarily interacted with the "AI voice assistant." The actions of Defendant were undertaken for legitimate business purposes and in good faith in an effort to comply with applicable law, based on all relevant facts and circumstances known by them at the time they so acted, and the actions of Defendant are thereby justified, proper, and lawful in all respects.

14.     Plaintiff's and the putative class members' claims for damages are barred in whole or in part by the Due Process Clause of the United States Constitution and/or the Constitution of the State of Illinois. Plaintiff alleges that he and the putative class members are entitled to recover either $1,000 or $5,000 in statutory damages for each alleged violation of BIPA. The statutory damages potentially available under BIPA, as applied to Plaintiff's and the putative class members' claims and allegations, are grossly excessive and disproportionate given that Plaintiff and the putative class members have not suffered any injury or harm to warrant such relief and, therefore,

22150789 _1

any award of statutory damages to Plaintiff or the putative class members would violate Defendant's due process rights.

15.     Plaintiff and the putative class members' claims are barred in whole or in part by the Due Process Clause of the United States Constitution and/or the Constitution of the State of Illinois because BIPA is unconstitutionally vague on its face and/or as applied in this case to Defendant.

16.     The Complaint is barred in whole or in part to the extent that Plaintiff or any putative class member failed to mitigate his or her damages. For any period of time in which Plaintiff or the putative claims members failed to exercise reasonable diligence and ordinary care in trying to minimize their damages, Plaintiff and the putative class members are not entitled to recover damages.

17.     The Complaint is barred in whole or in part because BIPA is special legislation that confers a special benefit or exclusive privilege on a person or group of persons to the exclusion of others similarly situated, and is therefore unconstitutional under the special legislation clause of the Illinois Constitution.

18.     Based on the facts and circumstances of this case, the claims of Plaintiff and the putative class members are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA to activity occurring outside Illinois, in violation of the Illinois prohibition on giving statutes extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute.

19.     Based on the facts and circumstances of this case, the claims of Plaintiff and the putative class members are barred, in whole or in part, because they purport to require this Court to apply the requirements of BIPA to activity occurring outside Illinois, in violation of the dormant

22150789 _1

Commerce Clause of the United States Constitution and/or the Supremacy Clause of the United States Constitution.

20.     The claims of Plaintiff and the putative class members fail, in whole or in part, because they have not sustained any cognizable injury or damages. Plaintiff does not allege any injury beyond a technical statutory violation.

21.     The claims of Plaintiff and the putative class members are barred, in whole or in part, because the recovery requested would not be a reasonable estimate of any actual damages, but instead would amount to a disparate penalty, akin to punitive damages for strict liability, given that Plaintiff and the putative class members have not suffered any injury or incurred any harm to warrant such relief.

22.     The claims of Plaintiff and the putative class members are barred, in whole or in part, because all or part of the damages alleged in the Amended Complaint were caused by the acts and/or omissions of other persons or entities (including, without limitation, acts and/or omissions of Plaintiff and/or members of the putative class and/or persons who acted on their behalf), for whose conduct ConverseNow is not legally responsible. Therefore, if Plaintiff and/or members of the putative class are found to be entitled to recover any of the alleged damages, ConverseNow's share must be apportioned or reduced to the extent that such damages are attributable to persons or entities other than ConverseNow.

ConverseNow reserves the right to assert and rely on such other defenses as may become available or apparent during the course of discovery and to amend their answer to assert such additional defenses.

WHEREFORE, having fully answered Plaintiff's Class Action Complaint, and denied any and all unlawful conduct alleged by Plaintiff, ConverseNow requests that the Complaint be dismissed

22150789 _1

in its entirely with prejudice; that Plaintiff take nothing by way of the Complaint; that ConverseNow be awarded its costs incurred herein; and that ConverseNow be awarded such further relief as the Court deems just and proper.

Dated: October 9, 2024                                    Respectfully submitted,

HILLARD M. STERLING
ARDC No. 6232655
ROETZEL & ANDRESS, LPA
70 W. Madison St., Suite 3000                             _____
Chicago, Illinois 60602                                              Hillard M. Sterling
(312) 962-8082
hsterling@ralaw.com

**ATTORNEY FOR CONVERSENOW**
**TECHNOLOGIES, INC.**

30

22150789 _1